

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00812-CV

**TEXAS DEPARTMENT OF TRANSPORTATION**,
Appellant

v.

Naomi **MARKHAM**, Carrie Markham, and Trevor Markham, Individually and as the
Administrator of the Estate of Joslyn Markham, Deceased,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-01166
Honorable Martha Tanner, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Luz Elena D. Chapa, Justice
               Beth Watkins, Justice

Delivered and Filed: August 21, 2019

AFFIRMED IN PART; DISMISSED FOR WANT OF JURISDICTION IN PART

Appellant Texas Department of Transportation ("TxDOT") appeals the trial court's order

denying its plea to the jurisdiction. On appeal, it argues appellees Naomi Markham, Carrie

Markham, and Trevor Markham, Individually and as the Administrator of the Estate of Joslyn

Markham, Deceased, ("the Markhams") did not establish a waiver of governmental immunity

under the Texas Tort Claims Act ("TTCA") as to their premises defect claims and the Markhams'

claim for negligence per se should be dismissed for want of jurisdiction. We dismiss the

Markhams' negligence per se claim for want of jurisdiction and affirm the remainder of the trial court's order.

## BACKGROUND

In February of 2015, Joslyn was driving southbound on U.S. Highway 281 when she crashed into a guardrail. Her truck vaulted the guardrail before falling into the small creek below and landing on its roof. The wreck killed Joslyn and critically injured her passenger and sister, Naomi. When investigating the wreck, the Markhams learned the guardrail was a height of 23 and 5/8 inches as opposed to the 27 inches required by TxDOT.

Relevant to this appeal, the Markhams sued ISI Construction Co., Inc. and TxDOT alleging a premises defect claim and arguing TxDOT was negligent in failing to ensure the guardrail met the height requirement of 27 inches. The Markhams amended their petition to add: Guerra Construction as a defendant; a gross negligence claim against TxDOT; and claims for joint enterprise and civil conspiracy against ISI Construction, TxDOT, and Guerra Construction.

TxDOT filed a plea to the jurisdiction, asserting its governmental immunity from suit had not been waived. The trial court granted TxDOT's plea as to the Markhams' claims for joint enterprise and civil conspiracy, but denied TxDOT's plea as to their negligence and gross negligence claims, both arising from a premises defect. The Markhams then amended their petition, adding a negligence per se claim against TxDOT. This interlocutory appeal followed.

## ANALYSIS

### Standard of Review

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *City of San Antonio v. Cervantes*, 521 S.W.3d 390, 394 (Tex. App.—San Antonio 2017, no pet.). Whether a trial court has subject matter jurisdiction is a

question of law subject to de novo review. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Cervantes*, 521 S.W.3d at 394.

If, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the reviewing court must determine whether a fact question on the jurisdictional issue exists by considering the relevant evidence. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414 (Tex. 2008). If the evidence raises a fact question on jurisdiction, the plea cannot be granted. *Id.* If the relevant evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.*

### *TxDOT's Actual Knowledge of the Condition*

TxDOT first contends the Markhams failed to raise a fact issue that it had actual knowledge that the guardrail constituted an unreasonably dangerous condition at the time of the accident. TxDOT contends the evidence produced by the Markhams failed to demonstrate TxDOT's knowledge of the purportedly defective guardrail height to a "virtual certainty."

### *Applicable Law*

In general, governmental entities are immune from suit. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 663 (Tex. 2019). The TTCA provides a limited waiver of governmental immunity when a claim arises from a premises defect. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021-101.022, 101.025. In cases alleging a premises defect, the government owes the plaintiff "only the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM. CODE § 101.022. The plaintiff must therefore show the governmental entity had actual knowledge "of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time." *Stewart*, 249 S.W.3d at 413–14 (internal quotations omitted). Circumstantial evidence can establish actual knowledge if it "either directly or by reasonable inference" supports that conclusion. *Id.* at 415.

*Application*

When viewed in the light most favorable to the Markhams, as the standard of review requires, the evidence demonstrates that in 2013, a person drove into a guardrail on U.S. Highway 281 South. After this first wreck, TxDOT hired ISI Construction to repair that guardrail. The 2013 police report depicts the location of the damaged guardrail and deposition testimony from TxDOT's project manager for the ISI Construction maintenance contract confirms the portion of the guardrail repaired by ISI Construction was located in the same area as Joslyn's wreck. TxDOT Work Order G-133-NE indicates its inspector, Joe Tijerina, inspected and measured the guardrail after ISI Construction completed the repair work.

Approximately one year after ISI Construction completed its repair, Joslyn's wreck occurred. After Joslyn's wreck, TxDOT again hired ISI Construction to repair this guardrail. TxDOT's contract called for a "smooth rail alignment"—essentially, repairing it to the height it was before Joslyn's wreck. The Markhams' expert measured the guardrail after this second repair and, with additional reference to other evidence, determined that this guardrail was 23 and 5/8 inches high on the date of Joslyn's wreck.

The Markhams also presented evidence that TxDOT's specifications for guardrails like this required them to be at least 27 inches high. Deposition testimony from TxDOT's maintenance contract engineer and ISI Construction's project manager admitted that the standard height requirement for guardrails at this time was 27 inches. TxDOT's compliance inspector for this project knew 27 inches was the standard height required for these guardrails. In 2010, TxDOT even received a memorandum from the U.S. Department of Transportation's Federal Highway Administration warning of the risk of failure of guardrails shorter than 27 inches. That report specifically warned that pickup trucks like the one Joslyn was driving could vault a guardrail lower than 25 and 1/2 inches. This is some evidence that TxDOT actually knew this guardrail was shorter

than its own specifications required and of the unreasonably dangerous condition that defect created for drivers like Joslyn. *See id.* at 413–14.

TxDOT argues, however, this evidence fails to demonstrate it had actual knowledge of the height of the guardrail to a "virtual certainty," pointing out the work order fails to specify the height of the guardrail after it was repaired. We disagree. Here, some evidence shows that TxDOT's inspector knew the guardrail's height requirements and actually inspected *and measured* the guardrail after ISI Construction completed its repair work.[1] A jury could reasonably infer TxDOT's inspector knew the repaired guardrail was too low and posed a dangerous condition at the time of Joslyn's wreck. *See id.*; *see also City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536–37 (Tex. 1996) (holding evidence that person in charge of recreation center knew roof leaked and it had been raining raised fact issue that City actually knew water would be on floor of recreation center). Accordingly, we reject TxDOT's contention that there was no evidence of its actual knowledge of this dangerous condition and overrule its first issue.

### The Markhams' Knowledge of the Condition

TxDOT next argues there is no evidence indicating Joslyn did not have actual knowledge of the guardrail's height at the time of the wreck. TxDOT argues even if there is evidence it actually knew of the guardrail's height, the guardrail's height was open and obvious so it had no duty to warn Joslyn, preserving its governmental immunity.

---

[1] TxDOT argues that the "Inspected, Measured, Calculated, Reported By" statement on the work order before Tijerina's signature means only that Tijerina measured the 50 linear feet of repaired guardrail. The standard of review, however, requires us to adopt the Markhams' reasonable interpretation of that statement as some evidence that ISI Construction completed the repair work as required by its contract with TxDOT, i.e., to repair this guardrail to the height it was before the Markhams' wreck. *See id.*

*Applicable Law*

"[T]o establish liability for a premises defect, a licensee must prove that he or she did not actually know of the condition." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 558 (Tex. 2002). If a licensee is aware of a dangerous condition, then she "has all the warning [s]he is entitled to expect"—she has an opportunity to make an intelligent choice as to whether the advantage of going on the land is sufficient to justify the risks involved. *Id*. at 557–58. A licensee has actual knowledge of the condition if it was perceptible to her, or if she could infer the condition's existence from facts within her knowledge. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

The leading case on this topic is *County of Cameron v. Brown*. 80 S.W.3d at 549. There, the governmental entity claimed the alleged premises defect—a failed block of lights on an elevated and curving roadway at night—was open and obvious to the plaintiff. *Id.* at 555, 558. That dangerous condition, however, was not open and obvious to motorists when they entered the roadway—"the point at which they could choose to avoid the condition or otherwise protect themselves." *Id.* at 558.

*Application*

The same is true here. Without deciding whether knowledge of a dangerous condition like this should be imputed to drivers as a matter of law, photographs show the defective guardrail at the top of a hill around a bend in the highway where it could not be seen before entering the highway. Unlike the governmental entity's allegation in *Brown* that "darkness at night" was an open and obvious condition, we do not believe the law imposes on drivers like Joslyn the obligation to know that TxDOT's Roadway Standards require guardrails like this to be 27 inches or to appreciate the risks preserved by this guardrail, which was 3 and 3/8 inches shorter than required.

The pleadings and jurisdictional evidence do not affirmatively negate Joslyn's lack of actual knowledge. *See id.* We therefore overrule TxDOT's second issue.

### *Negligence Per Se*

Finally, TxDOT argues the Markhams' negligence per se claim—a claim they added after the trial court denied its plea to the jurisdiction—should be dismissed for want of jurisdiction because even if the TTCA waives immunity for that claim, the discretionary function exception applies. TxDOT claims it can raise this issue for the first time on appeal because it is jurisdictional in nature.

### *Interlocutory Jurisdiction*

TxDOT correctly asserts that we must address this argument. Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code does not divest appellate courts of authority to review immunity claims first asserted on interlocutory appeal. *Rusk v. State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). In this situation, we "must construe the pleadings in favor of the party asserting jurisdiction, and if necessary, review the record for evidence supporting jurisdiction." *Id.* at 96. If the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, the defendant bears the burden of showing the plaintiff failed to show or would be unable to show jurisdiction. *Id.* If the defendant meets this burden, then we must dismiss the plaintiff's case; otherwise, we remand the cause to the trial court for further proceedings. *Id.*

### *Discretionary Function Exception*

In their fifth amended petition, the Markhams argue TxDOT's failure to maintain the guardrail at the required height violated section 224.032(a)(1) of the Texas Transportation Code, constituting negligence per se. Section 224.032(a)(1) provides that the State Highway Commission shall provide for the efficient maintenance of the state highway system. TEX. TRANSP. CODE ANN. § 224.032(a)(1). According to TxDOT, even if this section imposes a duty

on it and waives its immunity, its decisions related to the height of guardrails are discretionary, triggering the discretionary function exception as to the Markhams' negligence per se claim. TEX. CIV. PRAC. & REM. CODE ANN. § 101.056. To support this argument, TxDOT cites the Texas Supreme Court's recent opinion in *Tarrant Regional Water District v. Johnson.*

Section 101.056 preserves immunity "'for the state's failure to act, when no particular action is required by law.'" *Johnson*, 572 S.W.3d at 665 (quoting *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007)). It does not protect the state's failure to act, however, when a particular action *is* required by law. *Id.* at 666. In *Johnson*, the Texas Supreme Court concluded that a water district's deliberate choices about the depth of a riverbed at the base of a dam were discretionary design decisions protected by section 101.056. *Id.* at 668. In doing so, the court rejected the plaintiffs' claims that the district had an obligation to prevent the creation of certain dangerous conditions by maintaining the river at a specific depth that was shallower than the district had chosen. *Id.* at 668–69. The court recognized, however, that if the evidence had shown that the river had become deeper than the district planned—and thus created the dangerous condition—as a result of the district's negligence, then those facts "might place [the plaintiffs'] claims outside section 101.056." *Id.* at 668.

Here, we agree with TxDOT that decisions related to the design of guardrails are discretionary, and that such decisions are therefore protected by section 101.056. TEX. CIV. PRAC. & REM. CODE § 101.056; *Johnson*, 572 S.W.3d at 669. While section 224.032(a)(1) requires maintenance of the state highway system, it does not establish any specific requirements for guardrail height. TEX. TRANSP. CODE § 224.032(a)(1). Because the statute upon which the Markhams rely does not require TxDOT to take any particular action, we conclude that section

101.056 deprives the trial court of jurisdiction to consider their negligence per se claim. We therefore dismiss that claim for want of jurisdiction.[2]

**CONCLUSION**

Based on the foregoing, we dismiss the Markhams' negligence per se claim for want of jurisdiction and affirm the remainder of the trial court's order denying TxDOT's plea to the jurisdiction.

Beth Watkins, Justice

---

[2] TxDOT has not argued that either section 101.056 or *Johnson* apply to the Markhams' remaining claims. But even if it had, we decline to hold that those claims—which speak to TxDOT's general duty of reasonable care, rather than a statutorily mandated obligation that would support a negligence per se claim—are barred by the discretionary function exception. "While the road design may be discretionary, the failure to keep the road safe for drivers in accordance with its design may not be." *Johnson*, 572 S.W.3d at 670; *see also Flynn*, 228 S.W.3d at 657-58. Here, even TxDOT has acknowledged that there is some evidence that the guardrails are lower than the required height not because they were designed that way, but because they have "settle[d]" over time. *See Johnson*, 572 S.W.3d at 668.